## COX v. BANKS et al.

## BANKS v. KELLY PILE & FOUNDATION CORPORATION.

No. 85 of 1942; No. 1 of 1943.

District Court, E. D. Pennsylvania.
July 23, 1943.

Norman W. Harker, of Philadelphia, Pa., for libellant Harry B. Cox.

Howard M. Long, of Philadelphia, Pa., for Charles T. Banks, respondent and libellant.

Robert G. Kelly, of Conlen, LaBrum & Beechwood, of Philadelphia, Pa., for

respondent Kelly Pile & Foundation Corporation.

BARD, District Judge.

These two actions in admiralty were consolidated for purposes of trial. The first is by Cox against Banks for the balance due under a charter of a lighter and for the cost of repairing damage to the lighter occurring while she was chartered. In this action Banks, under Rule 56 of the Supreme Court Admiralty Rules, 28 U.S.C.A. following section 723, impleaded as a respondent Kelly Pile & Foundation Corporation (hereinafter referred to as Kelly) with whom Banks had entered into a sub-charter of the lighter. The second action is by Banks against Kelly for the same cost of repairs and for charter hire under the sub-charter.

I make the following special findings of fact:

1. On September 14, 1942, Cox, by written charter party, chartered the deck lighter "Doyle" to Banks at a charter hire of $20 per day until returned, in as good condition as when received.

2. On the same day Banks orally sub-chartered the "Doyle" for an indefinite term to Kelly at a charter hire of $25 per day.

3. Kelly, having examined the "Doyle", accepted delivery of the lighter on September 15, 1942.

4. At the time of the delivery of the lighter she was in good condition and was seaworthy.

5. On September 19, 1942, while the lighter was being used by Kelly, she developed a serious leak.

6. Orally on September 23, 1942, and again on September 25th, Kelly notified Banks that the "Doyle" was leaking, and that it was no longer able to use her, and was terminating the sub-charter. The following day Kelly paid Banks sub-charter hire for the period from September 15th to September 23rd.

7. Both Banks and Cox refused to accept re-delivery of the lighter "Doyle" from Kelly until Kelly had caused repairs to be effected to her.

8. On October 15, 1942, Kelly caused the lighter to be re-delivered, over the protest of Cox and Banks, to the wharf of Cox where Kelly had originally accepted delivery of the lighter.

9. Cox was unable to have repairs to the lighter made until October 29 and 30, 1942, when she was repaired sufficiently to render her serviceable.

10. The reasonable cost of the repairs made necessary as a result of the damage incurred on or about September 19, 1942, is $1,360.

Discussion.

Apart from the question of the extent of the damage to the lighter, there is no serious dispute as to the legally significant facts. Kelly, after obtaining from Banks the sub-charter of the "Doyle" on September 14, 1942, accepted the lighter from Cox's wharf and began using her in its operations. On September 19th a leak developed in the lighter of such serious proportions as to render her wholly unfit for further operations. Kelly sought to return her to Banks or to Cox, who refused to accept re-delivery until she was repaired. On October 15th Kelly had the lighter towed to Cox's wharf and left there. Cox notified Banks and Kelly of a survey to be made on October 29th of the damage to the lighter. On that day she was hauled out of the water and examined by two independent experts, engaged by Cox, who concluded that she had scraped her bottom, causing the leak and causing a twist to develop. The examination was made in the presence of Cox, Banks and representatives of Kelly. All but the Kelly representatives signed a survey estimating the cost of repairs necessary as a result of the damage at $1,360.

Kelly paid to Banks charter hire at the rate of $25 per day for nine days, but denied liability for further hire and for the damage done to the lighter. Banks paid Cox charter hire at the rate of $20 per day for nine days and denied further liability. In his action against Banks, Cox claims charter hire from September 23 to October 30, 1942, at the stipulated rate of $20 per day, or $740; the cost of necessary repairs as shown by the survey, $1,360; the cost of the survey, $50; and towing charges of $20.

Banks, in his petition to implead Kelly as a respondent, alleges that Kelly is responsible directly to Cox for the repairs, survey and towing charges and that Kelly is responsible to him for charter hire at the stipulated rate of $25 a day from September 23 to October 30, 1942. In his independent action against Kelly, Banks claims that Kelly is liable to him for the

above items of expense and the agreed charter hire.

On the question of liability for the damage, the law is quite clear and is not seriously disputed by the respondents. Where a boat is chartered, a presumption of negligence on the part of the charterer arises upon a showing by the owner that the boat was damaged during the charter period, and this presumption remains unless the charterer offers evidence sufficient in the opinion of the trial court to excuse him. Tomkins Cove Stone Co. v. Bleakley Transp. Co., 3 Cir., 40 F.2d 249; The Moran No. 10, D.C., 41 F.2d 255. Kelly failed to offer sufficient evidence to exculpate itself from fault in causing the damage which occurred during its use of the lighter, and it is therefore liable to Banks. Banks, who agreed to return the lighter in good condition to Cox, is in turn liable to him for the damage caused.

Kelly strenuously insists, however, that the sum of $1,360 claimed by Cox and by Banks is far in excess of the reasonable cost of repairs required to be made to the lighter as a result of the damage to her. Respondent Banks, who signed the survey, concedes this sum to be reasonable. Kelly contends that the only amount of repairs actually necessitated by the damage was $333.85, which was the sum paid for the repairs which Cox had made on October 29 and 30, 1942, since which time the lighter has been in service. After careful consideration of the expert testimony on this question, I have concluded that the sum of $1,360 represents the reasonable cost of repairs necessitated by the damage to the lighter incurred while she was being used by Kelly in its operations.

The final question is whether Banks and Kelly are not relieved of liability for charter hire during the period from September 23 to October 30, 1942, because Cox refused to accept the tendered return of the lighter on the former date and refused to give orders to have her hauled out of the water for repairs. But no duty to do either of these acts was upon Cox. He was entitled to his charter hire until the lighter was returned to him in good condition, and he neither had to accept her in a damaged condition nor subject himself to a repairman's lien by ordering her to be repaired. If, as Kelly contends, no repairman would haul her out of the water without the consent of the owner, for fear of losing his lien—a difficulty which Kelly apparently could have obviated by paying or securing payment to the repairman in advance—this was a matter it should have considered when it undertook the responsibility of returning the lighter in good condition. The same answer applies to Kelly's argument that it should not be responsible for hire during a period in which shipyards were too busy to make the necessary repairs to the lighter. When an owner charters a boat to another, the latter becomes responsible for its return in good condition, and must bear any loss resulting from the delay incident to repairing damage to the boat occurring during her use by the latter.

I make the following conclusions of law:

1. Banks was under a duty to return the lighter "Doyle" to Cox in as good condition as when received, less ordinary wear and tear, before the agreed charter hire would cease.

2. Kelly was under the duty to return the lighter "Doyle" in as good condition as when received, less ordinary wear and tear, before the sub-charter hire would cease.

3. Cox was under no duty to accept the return of the lighter "Doyle" in a damaged condition or to order her hauled out of the water for repairs.

4. In action No. 85 of 1942, Banks is liable to Cox in the sum of $1,360 for repairs; $740 for the balance of charter hire; $50 for the expense of the survey; and $20 for towing costs; or a total of $2,170.

5. In action No. 85 of 1942, Kelly is liable to Cox in the sum of $1,360 for repairs; $50 for expense of survey; and $20 for towing; or a total of $1,430.

6. In action No. 85 of 1942, Kelly is liable over to Banks for the sum of $1,360 for repairs; $50 for expense of survey; $20 for towing costs; or a total of $1,430, or such part thereof as Banks may be required to pay to Cox.

7. In action No. 1 of 1943, Kelly is liable to Banks for the sum of $900 for charter hire.

8. The liability of Kelly Pile and Foundation Corporation to the libellant is primary for the total sum of Fourteen Hundred and Thirty Dollars ($1,430) being Thirteen Hundred and Sixty Dollars ($1,360) for repairs, Fifty Dollars ($50)

for expense of survey, and Twenty Dollars ($20) for towing, being the items found due in Conclusion Number Five, and the liability of Charles T. Banks is secondary for those items, in the total sum of Fourteen Hundred and Thirty Dollars ($1,430), being part of the items found due in Conclusion Number Four.

9. The liability of Charles T. Banks to the libellant is primary for Seven Hundred and Forty Dollars ($740), the balance of charter hire, being the item found due in Conclusion Number Four.